143 So. 808

### In re OPINIONS OF THE JUSTICES.
#### No. 18.

Supreme Court of Alabama.
Oct. 6, 1932.

### Response of the Justices.

To the Honorable Senate of Alabama:

House Bill 305 deals with the existing obligations of the state represented by outstanding warrants issued to county and municipal agencies and institutions for the purpose of paying teachers' salaries, etc.

It provides for the issuance of special revenue certificates by the state auditor in lieu of warrants now held. These certificates are to be negotiable paper and have the effect of a warrant on the state treasurer, payable at future dates with interest.

The bill declares the certificates shall not constitute an indebtedness of the state, nor be a general charge against the faith and credit of the state, but be payable only out of a special fund provided in the act.

To create such special fund the act provides that out of the general funds coming into the state treasury from and after September 30, 1933, the sum of $1,500,000 be set apart for the fiscal year beginning October 1, 1934, and a like sum for each subsequent fiscal year, and applied to the payment of such certificates or warrants, principal and interest. The total principal of these certificates is limited to $6,000,000. This special fund is to be a first charge on the general funds, less interest on the bonded debt, for a series of years running beyond the present quadrennial period and beyond the tenure of the present Legislature.

In essence the act seeks to fund the present warrants payable out of current revenue, by substituting interest-bearing time certificates, declared to have the effect of warrants, and by presently creating a charge on future revenues of the state for the payment of same, principal and interest.

We are impelled to hold the proposed bill violative of section 213 of the Constitution. In re Opinions of Justices, 223 Ala. 130, 136 So. 489; In re Opinions of Justices, ante, p. 356, 143 So. 289.

The ends sought by the bill, the payment of the salaries of teachers who have rendered a highly favored public service, relying upon their state to meet its obligations to them, are most commendable. But we are not at liberty to strike down constitutional provisions, however meritorious the ends sought.

JNO. C. ANDERSON,
Chief Justice.
WM. H. THOMAS,
VIRGIL BOULDIN,
JOEL B. BROWN,
THOMAS E. KNIGHT,
Associate Justices.

Justices GARDNER and FOSTER entertain the view the bill involved is not violative of section 213 of the Constitution, and submit the following opinion, prepared by Justice FOSTER:

In response to your Resolution No. 29, in connection with House Bill 305, we think your inquiry involves the discussion of important constitutional questions. Section 213 is explicit that no new debt shall be created against or incurred by this state or its authority, except as stated.

The question seems to be largely determined by the status of the provision for interest, as to whether there is thereby created a state debt.

"Interest" is compensation for the failure to pay money or to perform a contract at the time when performance was due by such contract. Section 8564, Code; Vincent v. Gilmer, 51 Ala. 387. Interest does not run against the state except by virtue of express contract entered into pursuant to constitutional authority. Many cases are collated in 22 Am. St. Rep. note, page 648, and others may be noted as follows: Molineux v. State, 109 Cal. 378, 42 P. 34, 50 Am. St. Rep. 49; 36 Cyc. 399, sec. (4 b); Schlesinger v. Wis-

consin, 195 Wis. 366, 218 N. W. 440, 57 A. L. R. 352; 25 R. C. L. 405, § 38; Davis v. State, 121 Cal. 210, 53 P. 555; Jobe v. Urquhart, 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351.

It may be conceded to be contrary to our Constitution to donate funds to a private individual or corporation, without at least a moral obligation. State v. Clements, 220 Ala. 515, 126 So. 162; sections 93 and 94, Constitution. But in that case we recognized the right of the state to make an appropriation to discharge a moral obligation, and showed that such right is sustained by the great weight of authority.

But an appropriation to charitable or educational institutions under the control of the state (section 73), or to the public schools (sections 256, 260), is not dependent upon a moral obligation. To them, the state may, and habitually does, make donations with full constitutional power. Opinion of the Justices, 215 Ala. 524, 111 So. 312; Harman v. Ide, 224 Ala. 414, 140 So. 418. It is not important what may be the consideration which underlies such a donation. It is not only not prohibited but is authorized and directed, consistent with the condition of the treasury, and the resources of the state. Section 260. It is clear therefore that an appropriation simply in anticipation of funds to be received from revenue created by existing law may be made to or for the public schools of the state, without thereby creating a debt.

Appropriations have been made, and warrants are outstanding in the hands of the school authorities, or subject to their control. Does the proposed bill merely undertake to add to the appropriation for such public schools and institutions? If that were its form, its constitutionality would be well founded, if suitable provision is made by law to produce the revenue to meet such appropriation when payable. That seems to be a reasonable interpretation of the bill (No. 305), and we hold that such is its effect.

We do not think that the solution of the question depends upon the ordinary repealable nature of an appropriation. Section 22 of the Constitution, which preserves the obligations of contracts, applies to the state, as to an individual. State v. Cobb, 64 Ala. 127 (7), 152. See the discussion and authorities cited by Judge Mayfield in Town of New Decatur v. A. T. & T. Co., 176 Ala. 506 et seq., 58 So. 613, Ann. Cas. 1915A, 875; 36 Cyc. 880 (H); Fletcher v. Peck, 6 Cranch, 87, 3 L. Ed. 162.

The argument that, as by the appropriation a corporation is set up with authority to purchase and hypothecate the warrants or revenue certificates provided for in the act, it amounts to a contract for the benefit of those so receiving them that the appropriation will not be repealed, if sound, does not prove that thereby a debt is created as prohibited by sec-

tion 213. The state may contract without creating a debt as there mentioned.

If the form of the act as a whole amounts to a contract not to revoke the appropriation, though an appropriation is ordinarily revokable (36 Cyc. 896, § 3), its nature as constituting a debt depends upon other considerations. A mere appropriation creates a debt only when the existing revenue laws are not reasonably adequate to raise sufficient funds to meet the appropriation when payable. 36 Cyc. 884; 25 R. C. L. 397; Brown v. Gay-Padgett Hardware Co., 188 Ala. 423, 66 So. 161.

When therefore we are called upon to consider whether an appropriation payable in the future creates a debt under section 213, we must answer that it is conditioned upon whether reasonably adequate provision has been made by which it will be reasonable to anticipate sufficient funds in the treasury to meet it when payable.

The Teasley Bill, mentioned in Re Opinion of Justices (Ala. Sup.) 143 So. 289,[1] was we think subject to this defect in view of the condition of the state treasury which was then, and is now, a matter so generally known as to demand judicial notice.

The situation is inherently different from the Lapsley inquiry as reported in 223 Ala. 130, 136 So. 489. Here, there are not interest coupons, nor other obligations to pay interest, but essentially an appropriation of a sum payable in the future sufficient to pay interest and to be derived from existing revenue laws and thereby to make a donation authorized by sections 73 and 260. The Lapsley Resolution related to the general indebtedness of the state, and was not limited to those institutions to which donations are authorized by the Constitution, and was therefore within the principle asserted in Molineux v. State of California, supra.

Whereas the bill in question bears more resemblance in this respect to our case of Alabama State Bridge Corporation v. Smith, 217 Ala. 311, 116 So. 695, 699, in which the act made provision for the payment of interest out of any funds in the treasury, and it thus defined a "debt" within the meaning of section 213: "Our judgment is that 'debt,' within the meaning, the purview, the whole content, of the constitutional provision, is that which the state in any event is bound to pay, an obligation secured by the general faith and credit of the state. * * * There is no promise on the part of the state to pay in any event; there is no pledge that there will be a surplus of any fund; there is no pledge of the general credit of the state; there will be no debt within the meaning of section 213." In no sense is the state thus bound by House Bill 305 to pay in any event, nor does it pledge

_____
[1] Ante, p. 356.

the general credit of the state therefor, nor does it obligate the state in any event to provide funds for the payment of the appropriation. It is only payable when and if funds are available.

Other questions pertaining to section 213 seem to be settled by the cases of Alabama State Bridge Corporation v. Smith, supra, and Heustess v. Hearin, 213 Ala. 106, 104 So. 273.

Our answer to your inquiry is that House Bill 305 is not in violation of section 213, assuming as we do that the revenue laws are reasonably sufficient to provide funds to meet the appropriation when due.

> LUCIEN D. GARDNER,
> A. B. FOSTER,
> Associate Justices.

