**MILLER v. BANK OF AMERICA, N. T. & S. A., et al.**

**No. 11628.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 19, 1948.

Bernal & Bernal, of Berkeley, Cal., for appellant.

Theron Lamar Caudle, Asst. Atty. Gen., Helen R. Carloss, A. F. Prescott, Newton K. Fox and Ellis N. Slack, Sp. Assts, to Atty. Gen., Frank J. Hennessy, U. S. Atty, and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee U. S. A.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The claim of appellant arises out of an action instituted against Lyle B. Everett and Joseph B. McEachern in the Superior Court for Mendocino County, California. On January 5, 1944, a writ of attachment for $8,212.52 was issued and served upon the Bank of America. On March 11, 1944, a judgment by default in favor of appellant was entered in the amount of $5,052.43, plus attorneys' fees and interest and costs, which judgment was entered on the book of judg-

ments in the office of the County Clerk of Mendocino County, California, on said date.

One claim of the United States is based upon the amount of $2,520.75 for withholding tax, interest and penalties due from Everett and McEachern. The Commissioner's assessment list was received by the Collector on March 27, 1944. On April 3, 1944 notice and demand for payment was made on the taxpayers. On April 21, 1944 a notice of tax lien for $2,620.51 was filed with the Recorder of Sonoma County, California.

Another claim for social security tax due from the same taxpayers for $629.85 was assessed by the Commissioner on April 11, 1944; the Commissioner's assessment list was received by the Collector on April 14, 1944; on April 17, 1944, notice and demand for payment was made, and on April 21, 1944, a notice of tax lien for $661.34 was filed of record with the County Recorder of Sonoma County, California.

On April 21, 1944, the Collector served a notice of levy for the total taxes upon the Bank of America at its Healdsburg Branch, Sonoma County, California.

Bank of America thereupon brought an action of interpleader and for declaratory relief against the United States, appellant, Everett and others, as conflicting claimants to a fund of $3,199.59 on deposit with the Bank in its Healdsburg Branch, to the credit of Everett.

Judgment by default was entered against Everett and McEachern in favor of the Bank. Thereafter the Bank was dismissed from the action leaving pending a motion for a order allowing it attorneys' fees and costs. The respective claims of the appellant, Miller, and the United States, to the fund, remained for settlement.

On these facts the District Court concluded that liens in favor of the United States arose when the Collector received the Commissioner's assessment list, as aforesaid, and on April 31, 1944 such liens were rendered valid when the Collector filed notices of same in the Recorder's office, Sonoma County, California, and served notice of levy upon the Bank at its Healdsburg Branch. The Court then held that the tax liens of the United States were superior to the "rights, claims and liens of the creditor defendant in and to the sum of $3,199.59 because recorded in Sonoma County, California, prior to the effectuation of any judgment liens in said County by any of said defendants."

The appellant now contends that a "judgment creditor" within the meaning of Section 3672(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3672(a), requires nothing more than the rendition and entry of a judgment.

The appellee asserts, on the other hand, that the fact that a judgment has been entered is not, in and of itself, the establishment of a lien on personal property.

The statutes applicable to the present case are as follows: Secs. 3670, 3671, 26 U.S.C.A. Int.Rev.Code; Sec. 3672, as amended by Sec. 505 of the Revenue Act of 1942, c. 619, 56 Stat. 798, 26 U.S.C.A. Int.Rev.Code § 3672.[1]

There is no question that the Government perfected its lien to the fund as far as it was able to do so and that it complied

[1] "Sec. 3670. Property subject to lien. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448.

"Sec. 3671. Period of lien. Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. 53 Stat. 449."

"Sec. 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors. (a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or * * *."

with the law of the State of California providing for the filing of notice of lien for internal revenue taxes in the office of the recorder of the county in which the property subject to the lien is situated.[2]

Appellant asserts that the above federal statutes should be literally construed and since the word "lien" is omitted in connection with the term "judgment creditor" as used therein, that it was not necessary for him to take any further action to perfect his right to the fund on deposit with the Bank of America: that the entry and docketing of the judgment was sufficient to entitle him to priority over the perfected lien of the Government in said fund.

█ The principle that a clear and unambiguous statute must be literally construed is long established.[3]

█ If a literal construction would defeat the object or scope intended by Congress, or would result in "absurdities so gross 'as to shock the general moral sense', then the courts may be entitled to depart from the strict wording in order to give the statute a reasonable construction." [4]

█ While the interpretation of the statute insisted upon by appellant probably would not have absurd or shocking results, it would clearly defeat the object intended by Congress. Moreover, it would be unreasonable to conclude that the Government intended to place itself at a disadvantage in procuring a tax lien when the decisions of the courts and the very history of the legislation in question show that before the enactment of the above statutes no lien whatsoever existed in favor of any class or classes of creditors.[5]

Although the precise question presented has not been decided, there have been many decisions under the statutes here involved where the courts by implication exclude the theory advanced by appellant. In all these cases it is certain that it is the *lien* created by the claim of a creditor within the meaning of recording acts which is contemplated, and not just the claim itself.[6]

█ A judgment in and of itself does not necessarily constitute a lien upon any property unless made so by statute. In Von Segerlund et al. v. Dysart, et al., 9 Cir., 137 F.2d 755, 757, this court said: "A judgment lien as it exists in the United States is a creature of statute, and in the absence of statute does not give rise to a

[2] II Deering's General Laws of California (1937) 3850, 3851: Act 8487. Notices of Liens for Internal Revenue Taxes. [Stats.1923, p. 1124.]

"§ 1. Notices, etc., may be filed. Notices of liens for internal revenue taxes payable to the United States of America and certificates discharging such liens may be filed in the office of the county recorder of the county or counties within which the property subject to such lien is situated."

[3] Hamilton v. Rathbone, 175 U.S. 414, 20 S.Ct. 155, 44 L.Ed. 219; Thompson v. United States, 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156.

[4] United States v. Beaver Run Coal Co., 3 Cir., 99 F.2d 610, 613; Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156, supra.

[5] "Prior to the enactment of the amendment in 1913 the Act contained no provision for priority on the part of any third parties. Decisions under the Act prior to 1913 repeatedly held that no third parties, not even innocent purchasers for value, were protected under any

circumstances from an unrecorded tax lien. United States v. Snyder, 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705. In 1913, 37 Stat. 1016, [26 U.S.C.A. Int. Rev.Code, § 3672(a)], Congress added the provision that the tax lien shall not be valid against 'any mortgagee, purchaser, or judgment creditor' until recordation of the notice. Congress at this time undoubtedly recognized that under the statute as it existed prior to 1913 no third person was protected under any circumstances, from an unrecorded federal tax lien. * * *" MacKenzie v. United States, 9 Cir., 109 F.2d 540, 542.

Cf. Reconstruction Finance Corporation v. Maley, 7 Cir., 125 F.2d 131, 135.

[6] Glass City Bank v. United States, 326 U.S. 265, 266, 66 S.Ct. 108, 90 L. Ed. 56; Citizens Nat. Trust & Savings Bank of Los Angeles v. United States et al., 9 Cir., 135 F.2d 527, 528; Underwood v. United States, 5 Cir., 118 F.2d 760, 761; United States v. City of Greenville et al., 4 Cir., 118 F.2d 963, 966; United States v. Beaver Run Coal Co., 3 Cir., 99 F.2d 610; United States v. Spreckels et al., D.C., 50 F.Supp. 789, 791.

lien until an execution is delivered to the sheriff. 34 C.J. 568, 569, § 870 [49 C.J.S., Judgments, § 454, 455]. 'Except in the few jurisdictions where a judgment does not of itself bind land, a judgment attaches as a lien without the use of any process, except as to property which is not commonly subject to the lien of a judgment, but can be made so by the levy of an execution, as trust property or personalty * * *.' Id., pp. 584, 585, § 892, [49 C.J.S., Judgments, § 462]. 'The lien [of a judgment] does not attach to personal property except where a statute so provides.' Id., pp. 587, 588, § 898 [49 C.J.S., Judgments, § 472]. See also 31 Am.Jur., Judgments, § 308, p. 23."

■ The general rule is that goods and chattels of a judgment debtor are subject to liens predicated upon an execution but are not subject to liens predicated upon the rendition or entry of judgment. In re Bailey, D.C., 144 F. 214, 215, it is said: "A judgment itself does not necessarily constitute a lien upon any property, unless made so by statute. Usually, as it respects personal property, it only becomes a lien by virtue of an execution and a levy thereunder. From the time of the levy, the lien is deemed to attach, and not before." [7]

In Nogi v. Greenwood, D.C., 1 F.Supp. 60, 62, cited with approval in Von Segerlund v. Dysart, supra, we find the following language: "A judgment is not a lien on personal property of the debtor; it is only the enforcement of such judgment that can possibly create a preference. The mere entry of judgment cannot."

In Re Richenell Fabric Mfg. Co., Inc., D.C., 31 F.Supp. 645, 647, also cited with approval in the Von Segerlund case, the court said: "In the case of judgments, judgment creditors obtain no lien against personal property until execution and levy."

California follows the general rule that goods and chattels of a judgment debtor are subject to liens based upon an execution and not upon the rendition or entry of judgment.

In Summerville v. Stockton Milling Co., 142 Cal. 529, 540, 76 P. 243, 247, the California Supreme Court held that a leasehold estate for a term of years was personal property and that no lien could be acquired thereon under a judgment until levy of execution. Stressing the difference between the effectuation of a lien on personalty and that on real property, the court said: "The claim of the plaintiff that no formal levy was necessary upon the growing crop, nor upon the leasehold interest, is, by reason of the proposition which we have just considered, necessarily untenable. It may be conceded, as was decided in Lehnhardt v. Jennings, 119 Cal. 192, 48 P. 56, 51 P. 195; Bagley v. Ward, 37 Cal. 121, 99 Am.Dec. 256, * * * and Blood v. Light, 38 Cal. [649] 654, 99 Am.Dec. 441, that the levy of an execution is not necessary where the judgment itself constitutes a lien upon the real property which is the subject of the execution sale. But, as we have seen, *the judgment in this case did not constitute a lien upon the property* [personal] *sold, and, as there was no levy,* it follows that the sale, if otherwise valid, took effect upon the day of its date, and not before, or at all events not before the notices of the sale were posted. * * * We think, therefore, that *there was no lien upon the leasehold estate* of Stuart in favor of the plaintiff *until the sale took place or the notices were posted* * * * and, consequently, that, so far as that question determines his right, Hewlett had the superior right to the possession of the wheat in controversy, so far as that possession may be necessary to protect his lien thereon for the payment of the debts aforesaid." [Emphasis supplied.]

Later, in Summerville v. Kelliher, 144 Cal. 155, 157, 77 P. 889, 890, the California Supreme Court reiterated its opinion in the above case as follows: "The judgment of Watson was not a lien on the leasehold interest of Stuart, and, there being no levy of the execution, the plaintiff's right takes its inception from the time of the sale or from the giving of the notice thereof." [8]

---

[7] See also Rock Island Plow Co. v. Reardon, 222 U.S. 354, 32 S.Ct. 164, 56 L.Ed. 231; Wilson v. Bell, 20 Wall. 201, 22 L.Ed. 259.

[8] See Balzano v. Traeger, 93 Cal.App. 640, 643, 270 P. 249.

■ Even though the property is held by attachment, under California law the judgment does not become a lien.[9]

■ In conformity with the laws of California, the venue of the case before us, in order that a judgment creditor may obtain a lien upon personal property under a judgment, it is necessary that a writ of execution issued under the judgment be levied on said property wherever situated. Since there was no levy of execution herein, it follows that the appellant had no claim or right to the fund ón deposit with the Bank of America belonging to the debtor as against the paramount and superior lien of the Government.

The judgment of the district court is affirmed.

---

[9] Summerville v. Stockton Milling Co., supra.