Bennie SEVITT, Plaintiff,

v.

Albert DEL GUERCIO, Officer in Charge,
Immigration and Naturalization Serv-
ice, Los Angeles, California, Defendant.

No. 19588.

United States. District Court
S. D. California, Central Division.

March 27, 1957.

Wirin, Rissman & Okrand, Los An--
geles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max
F. Deutz, Volney V. Brown, Jr., Asst. U.
S. Attys., Los Angeles, Cal., for defend--
ant.

BYRNE, District Judge.

Bennie Sevitt is an alien, a native and
citizen of Ireland who entered the United.
States on March 18, 1947, with a visitor's.
visa. He has resided in this country con--
tinuously since that time.

After a hearing conducted by a Special
Inquiry Officer of the Immigration and
Naturalization Service, Sevitt was found
to be deportable under 8 U.S.C.A. § 1251
(a) (5) [1] for failure to register and no--

1. Plaintiff was also found deportable for
violation of 8 U.S.C.A. § 1251(a) (9), in
that as a temporary visitor for pleas-
ure he failed to comply with the condi-
tions of that status. However, in this
proceeding we are only concerned with
the administrative decision relating to 8

U.S.C.A. § 1251(a) (5), as the ultimate
issue here is whether the plaintiff's ap-
plication for suspension of deportation
may be considered, and the determination
of that issue depends upon the construc-
tion to be given 8 U.S.C.A. § 1251(a) (5)..

tify the Immigration and Naturalization Service of his address in the United States or to notify them of changes of address as required by 8 U.S.C.A. § 1305. Timely application for suspension of deportation was filed and an appeal was taken to the Board of Immigration Appeals, which Board dismissed the appeal and refused to consider plaintiff's application for suspension of deportation because it thought it was barred from doing so.

Sevitt has exhausted his administrative remedies and here seeks judicial review of the administrative action. 5 U.S.C.A. § 1009; 8 U.S.C.A. § 1252; Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868.

The plaintiff asserts that there is no reasonable, substantial or probative evidence to support the administrative finding that he failed to furnish address information as required by 8 U.S.C.A. § 1305 or to support the finding that such failure was wilful and not excusable. This argument is without merit. The administrative record shows (Brief filed with Board) Sevitt conceded " * * * that until the time of his arrest by Immigration Officers he did not furnish the required address information" and that "he failed to register because he feared detection * * *". The record also shows that during the period he failed to comply with the address requirements, he used a fictitious name. It is an understatement to say that the administrative findings were based upon reasonable substantial and probative evidence.

A more serious problem is presented on the question of whether the Board of Immigration Appeals erred in refusing to consider Sevitt's application for suspension of deportation.

The authority to grant the relief of suspension of deportation is found in 8 U.S.C.A. § 1254(a)[2] which is divided into

2. "§ 1254. Suspension of deportation— Adjustment of status for permanent residence; contents

"(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who—

"(1) applies to the Attorney General within five years after the effective date of this chapter for suspension of deportation; last entered the United States more than two years prior to June 27, 1952; is deportable under any law of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the Immigration Act of 1917, as amended; and has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent or child, who is a citizen or an alien lawfully admitted for permanent residence; or

"(2) last entered the United States within two years prior to or at any time after June 27, 1952; is deportable under any law of the United States solely for an act committed or status existing prior to or at the time of such entry into the United States and is not within the provisions of paragraph (4) of this subsection; was possessed of all of the requisite documents at the time of such entry into the United States; * * * has been physically present in the United States for a continuous period of not less than five years immediately preceding his application under this paragraph, and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence; or

"(3) last entered the United States within two years prior to, or at any time after June 27, 1952; is deportable under any law of the United States for an act committed or status acquired subsequent to such entry into the United States and is not within the provisions

58

five paragraphs numbered (1) to (5). Each of the five paragraphs relates to different classes of aliens, the classification depending upon when the alien entered the United States, the grounds of deportation, whether the deportable act was committed or status existed prior to entry, at the time of entry, or subsequent to entry, and the length of time the alien has been present in the United States.

The complexity of the problem in the instant case results from the fact that an alien such as Sevitt who has violated the registration requirements falls within the provisions of *both* paragraph (1) and paragraph (5), except that to be eligible

for suspension of deportation under (5), the alien must have been physically present in the United States for a continuous period of not less than ten years immediately following the commission of the act (failure to register) for which he is deportable; whereas to be eligible under (1), the alien need only be present in the United States for a period of not less than seven years immediately preceding the date of application for suspension of deportation. The crucial importance of this difference to Sevitt is that he has been in this country for the seven-year period required under (1) but has not been in the country for the ten-year period required under (5).

of paragraph (4) or (5) of this subsection; was possessed of all of the requisite documents at the time of such entry into the United States; has been physically present in the United States for a continuous period of not less than five years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence; or

"(4) last entered the United States within two years prior to, or at any time after June 27, 1952; is deportable under paragraph (1) of section 1251(a) of this title insofar as it relates to criminals, prostitutes or other immoral persons, subversives, violators of narcotic laws and similar classes or under paragraph (2) of section 1251(a) of this title, as a person who entered the United States without inspection or at a time or place other than as designated by the Attorney General, or without the proper documents and is not within the provisions of paragraph (5) of this subsection; has been physically present in the United States for a continuous period of not less than ten years after such entry and immediately preceding his application under this paragraph and proves that during all of such period he has been and is

a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence; or

"(5) is deportable under paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title for an act committed or status acquired subsequent to such entry into the United States or having last entered the United States within two years prior to, or at any time after June 27, 1952, is deportable under paragraph (2) of section 1251 (a) of this title as a person who has remained longer in the United States than the period for which he was admitted; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence."

The Board of Immigration Appeals refused to consider Sevitt's application for suspension of deportation for the reason, as counsel for the Government now argues, that while the reference in paragraph (1) to aliens "deportable under any law of the United States" technically includes aliens deportable for failure to meet registration requirements, paragraph (1) does not apply to such aliens because paragraph (5) *specifically refers to the section* of law making that offense deportable. It is the government's position that when an alien is deportable under any provision of law specifically mentioned in paragraph (5), his application for suspension of deportation may be considered, if at all, only under that paragraph.

■■ The five paragraphs of § 1254 (a) show a statutory design to enact remedial legislation covering a number of different contingencies. In formulating the several possible categories, Congress provided that a deportable alien is eligible for the discretionary relief of suspension of deportation if he qualifies under the provisions of paragraphs (1) *or* (2) *or* (3) *or* (4) *or* (5). By the use of the disjunctive conjunction, "or", it is clear that Congress intended to present a choice dependent only upon the alien meeting the standards as required in the particular paragraph he seeks to avail himself of. Sevitt satisfies the requirements of paragraph (1) as he applied for the relief within five years after the effective date of the 1952 Act; he entered the United States more than two years prior to the enactment of the Act; he is deportable under a law of the United States and is not a member of a class of aliens whose deportation could not have been suspended by reason of section 19(d) of the 1917 Act, 39 Stat. 889; he has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of his application. It follows that his application should have been considered by the Board of Immigration Appeals.

Under the provisions of § 1254(e) an alien who is deportable for failure to comply with the registration requirements may be granted the privilege of voluntary departure only if he can meet the ten-year requirement of § 1254(a) (5). It is unreasonable to believe, asserts the government, that notwithstanding Sevitt's inability to meet the standards for the discretionary relief of voluntary departure, Congress intended that he be eligible for the greater relief of suspension of deportation under the standards set forth in paragraph (1) of § 1254(a). The answer to this assertion may be found in the time limitation of paragraph (1) which paragraph by its terms becomes ineffective after June 27, 1957. However, be that as it may, the courts should not resort to conjecture regarding policy decisions of Congress.

■ While it is the rule that the courts may depart from the strict wording of a statute in order to give the statute a reasonable construction where a literal construction would result in an absurdity or defeat the object intended by Congress, Miller v. Bank of America N. T. & S. A., 9 Cir., 166 F.2d 415, where the statute is clear and unambiguous it must be literally construed. Hamilton v. Rathbone, 175 U.S. 414, 20 S.Ct. 155, 44 L.Ed. 219; Thompson v. United States, 246 U.S. 547, 38 S.Ct. 349, 62 L.Ed. 876; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156. Nothing could be clearer than the statement of Congress that the Attorney General may, in his discretion, suspend deportation in the case of an alien who meets the standards prescribed in paragraph (1) of § 1254(a).

This Court in Acosta v. Landon, D.C., 125 F.Supp. 434, 441, said:

"The courts may not suspend the deportation of a deportable alien as that discretionary power is vested solely in the Attorney General, 8 U.S.C.A. § 1254. However, when the Attorney General is required as a condition precedent to an order of deportation to exercise his discretion with respect to the suspension

of deportation, the validity of the order must rest upon the needed exercise of discretion. If it is lacking, the order is ineffective. Where the order is ineffective, the custody of the petitioner is unlawful, and the court must order his discharge. A formal order to that effect will be entered."

Acosta v. Landon was a habeas corpus proceeding and Acosta was in custody. Sevitt is not in custody and there is no need to order his discharge. However, the order of deportation is ineffective and the alien may not be deported until the Attorney General, acting through his subordinates, has exercised his discretion. Judgment will be entered accordingly.

Counsel for plaintiff will prepare, serve and lodge findings and judgment pursuant to Rule 7 of the Rules of this Court.